UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| CREATIVE COMPOUNDS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-00089 |
| | ) | |
| IQ FORMULATIONS, LLC. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant IQ Formulation LLC.'s motion to dismiss (#10). The issues have been fully briefed. Because this Court finds it does not have personal jurisdiction over defendant, defendant's motion will be granted.

## I. BACKGROUND

Plaintiff is in the business of selling raw bulk ingredients to the sports nutrition and dietary supplement markets. (#1, p. 3). Between 2010 and 2017, plaintiff sold defendant a variety of raw materials that defendant would, in turn, use to create various sports nutrition and dietary supplement products. (*Id.*) In April 2015, the U.S. Food and Drug Administration (FDA) purportedly issued warning letters to fourteen companies regarding seventeen "dietary supplement" products that listed "AMP Citrate" as a "dietary ingredient" on the product labels. (*Id.*; *see also* #12-1). Plaintiff alleges "upon information and belief" that defendant was aware of these FDA warnings. (#1, p. 4). Despite this, plaintiff sold to defendant a single load of "AMP Citrate" for $34,479.89 in July, 2016. One month later, the FDA allegedly "raided" defendant's facilities and

1

"seized all of [defendant's] end products that included AMP Citrate." (*Id.*). Defendant did not pay plaintiff the $34,479.89 it charged to deliver the single load of "AMP Citrate." Instead, plaintiff states it "recovered the loss pursuant to an insurance claim." (*Id.*). The insurer who paid the claim then sued defendant in the case of *Creative Compounds, LLC. v. IQ Formulations, LLC.,* County Court for the Seventeenth Judicial Circuit, Broward County, Florida, Case No. CACE-18-004642 (the "Florida Action"). Plaintiff acted only as a nominal party to the Florida Action, and it was ultimately voluntarily dismissed by the insurer. During the Florida Action, plaintiff states defendant threatened it with legal action if it would not pay for defendant's damages.

Plaintiff filed the immediate case under the Declaratory Judgment Act—28 U.S.C. §§ 2201, 2202—seeking a declaration of its non-liability to defendant for damages arising out of the FDA's actions taken against defendant. Plaintiff explains that, if this Court grants defendant's motion to dismiss, "[defendant] will sue [plaintiff] in a different forum on the same set of facts[.]" (#12, p. 2). Plaintiff claims defendant has demanded at least five hundred thousand dollars as compensation, and thus uses the immediate case to preempt any contemplated lawsuit by defendant. (#1, p. 5).

## II. ANALYSIS

In seeking dismissal, defendant moves under a scattershot of theories including: (1) lack of subject-matter jurisdiction under Rule 12(b)(1) in that plaintiff's complaint does not allege an actual case or controversy—it being predicated on hypothetical future events; (2) lack of personal jurisdiction under Rule 12(b)(2) due to defendant's lack of sufficient minimum contacts with Missouri as the forum state; (3) improper venue under

Rule 12(b)(3) in that a substantial part of the events giving rise to plaintiff's claim occurred outside of Missouri; and (4) failure to state a claim under Rule 12(b)(6) in that plaintiff has failed to state any facts for which the Court could issue declaratory relief. Having determined that this case must be dismissed because of the lack of personal jurisdiction over defendant, the other grounds for dismissal need not be addressed.

### A. This Court Lacks Personal Jurisdiction Over Defendant Because It Has Insufficient Minimum Contacts with Missouri

To survive a motion to dismiss for lack of personal jurisdiction, the non-moving party need only make a prima facie showing of jurisdiction; that is, the "plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008).

Personal jurisdiction may be either general or specific. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1780 (2017). The exercise of general jurisdiction over a corporation may take place where "the corporation is fairly regarded as at home." *Id*. (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id*. Defendant, here, is a Florida limited liability corporation with its principal place of business in Florida and, as such, is not subject to general jurisdiction in Missouri. Plaintiff does not argue otherwise.

3

"Specific jurisdiction is very different. In order for a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Id.* (*quoting Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014)). "Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment." Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 593 (8th Cir. 2011). The Missouri Long-Arm Statute provides that jurisdiction extends to "any cause of action arising from" the "transaction of business within" or the "commission of a tortious act" within Missouri. § 506.500.1(1), (3), RSMo (2016). The Missouri legislature's objective in enacting the statute "was to extend the jurisdiction of the courts of this state over nonresident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States." *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. banc 1970). Thus, the critical issue is "whether the exercise of personal jurisdiction in this case comports with due process." *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000). The Constitution's Due Process Clause requires that there be "minimum contacts" between the nonresident defendant and the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945) (internal quotations omitted).

Plaintiff argues defendant has sufficient minimum contacts with Missouri because defendant "conducted dozens of transactions" in Missouri through its business

relationship with plaintiff, "reached out" into Missouri to "purchase products" from plaintiff, and "sells products through its subsidiary … throughout the country, including into Missouri." (#12, p. 8). Plaintiff also notes that it "accepted" defendant's business in Missouri. (*Id.*). Defendant—citing *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.,* 676 F.2d 309 (8th Cir. 1982)—argues contractual relationships are insufficient, alone, to establish minimum contacts with a forum state. Defendant also states, by way of affidavit, that plaintiff solicited defendant for business, that all transactions between plaintiff and defendant took place by e-mail facsimile, telephone, or by in-person visits in Florida, and that the "AMP Citrate" in question was delivered in Florida. (#14-2, p. 1-2).

On these facts, defendant has the better argument. In *Scullin Steel*, an officer for plaintiff traveled outside of Missouri to negotiate a contract with defendant in Pennsylvania. *Id*. at 310. The contract called for delivery of certain railroad products to defendant "F.O.B. St. Louis" over a two-year period (later extended to four years). *Id*. All payments by defendant were sent to plaintiff in Missouri, and all shipments were made from Missouri; the parties also frequently communicated by mail and exchanged telephone calls. *Id*. Defendant never visited Missouri in connection with the negotiation of the parties' contract. The Eighth Circuit, noting that "merely entering into a contract with a forum resident does not provide the requisite [minimum] contacts," held that defendant was not subject to personal jurisdiction in Missouri because "the use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors [that] cannot alone provide the 'minimum contacts' required by due process." *Id*. at 313-314.

5

A more recent case, *Dairy Farmers of Am., Inc. v. Bassett & Walker Intern., Inc.*, 702 F.3d 472 (8th Cir. 2012), is to the same effect. In *Dairy Farmers*, the out-of-state defendant purchased millions of dollars' worth of products from the Missouri plaintiff over the course of two years. The approximately 80 transactions were conducted by phone and e-mail. Despite "frequent communications with the plaintiff's offices in Missouri via phone, e-mail, and facsimile," the Court found the defendant had not transacted business in Missouri for the purposes of the long-arm statute, nor could specific personal jurisdiction be exercised under the due process clause. *Id*. at 478-479.

Here, the circumstances surrounding the parties' contractual relationship closely align with *Scullin Steel* and *Dairy Farmers*. The record demonstrates plaintiff and defendant primarily communicated by e-mail, phone, facsimile, or in-person at defendant's Florida offices. Also, the "AMP Citrate" at issue in this case was delivered in Florida. To the extent plaintiff claims defendant sells products in Missouri through its subsidiary, which does indeed have a larger Missouri connection, the mere existence of a possible subsidiary relationship between defendant and a non-party is, without more, irrelevant in the Court's analysis of specific personal jurisdiction. *See Goellner-Grant v. Platinum Equity, LLC*., 2018 WL 4462243 (E.D. Mo. Sept. 18, 2018). Likewise, the fact that plaintiff "accepted" the relevant contract in Missouri, or otherwise accepted payments thereunder in Missouri, is inadequate taken alone. *Scullin Steel*, 676 F.2d at 312-313. Simply put, plaintiff has not made a *prima facie* showing of jurisdictional facts.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss (#10) is **GRANTED**.

So ordered this 1st day of October 2018.

                                                    STEPHEN N. LIMBAUGH, JR.
                                                  UNITED STATES DISTRICT JUDGE